D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GHEORGHE PETRE,

       Plaintiff,         **MEMORANDUM & ORDER**

  -against-              13-CV-2657 (NGG) (SMG)

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
-----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

  Plaintiff Gheorghe Petre brings this action pro se pursuant to 42 U.S.C. §§ 405(g) and 1383(c), seeking judicial review of an adverse determination by an administrative law judge ("ALJ") denying his challenge to the amount of social security disability insurance ("SSDI") benefits he receives under Section 223 of the Social Security Act. (See Compl. (Dkt. 1) at 5-6.) Plaintiff argues that the Social Security Administration ("SSA") used the wrong formula for computing his SSDI amount. (Id. at 12-16.) For relief, Plaintiff seeks a credit of the alleged underpayment, with interest (id. at 16), as well as an award for emotional distress for violations of the Fifth and Fourteenth Amendments to the United States Constitution. (Pl.'s Resp. and Cross Mot. ("Pl.'s Resp.") (Dkt. 38) at 33-35.) Defendant Acting Commissioner of Social Security has filed a motion, and Plaintiff has filed a cross motion, for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (See Def.'s Mot. for J. on the Pleadings ("Def.'s Mot.") (Dkt. 36); Pl.'s Resp.) For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

I.  **BACKGROUND**

  Plaintiff was born in 1943 and reached the age of 22 in 1965. (Administrative R. ("R.") (Dkt. 32) at 65.) On January 13, 2000, Plaintiff filed an application for SSDI benefits, claiming

1

that he had been disabled since November 19, 1999, due to back problems. (Id. at 65-67, 76.)

The SSA denied Plaintiff's application (id. at 52), and Plaintiff requested a hearing to contest the denial (id. at 57, 58). On December 15, 2000, Plaintiff appeared with counsel at a hearing before ALJ Irving Fliegler. (See id. at 46.) On March 14, 2001, ALJ Fliegler issued a "fully favorable decision," finding that Plaintiff was disabled as of November 19, 1999. (Id. at 43-45.) On May 28, 2001, the SSA notified Plaintiff that he was entitled to monthly benefits effective May 2000.[1] (Id. at 15-16.) The SSA then provided Plaintiff with a retroactive payment of $7,129, and subsequent payments of roughly $786 per month. (Id. at 16.)

At some point in late 2006 or early 2007, Plaintiff asked the SSA for an increase in his monthly benefit. (See id. at 224.) On January 24, 2007, the SSA denied Plaintiff's request and informed him that he was already receiving the highest possible benefit amount based on his reported earnings. (Id. at 224-25.) On February 21, 2007, Plaintiff requested a hearing to challenge this determination, claiming that he was being improperly penalized for an alleged early retirement. (See id. at 39-42.) On May 29, 2007, Plaintiff filed a civil action in this court while his request for an administrative hearing was still pending. See Petre v. Comm'r of Soc. Sec., 07-CV-2184 (ARR) (E.D.N.Y.). (See also R. at 216-22.) On February 28, 2008, Judge Allyne R. Ross dismissed Plaintiff's 2007 action for lack of subject matter jurisdiction, finding that Plaintiff had not yet exhausted his administrative remedies before the SSA. (Id.) Meanwhile, on December 12, 2007, ALJ Sol. A. Wieselthier held a hearing on Plaintiff's challenge to his benefit amount. (See id. at 317-31.) On March 26, 2008, ALJ Wieselthier issued a decision finding that Plaintiff was already receiving the correct amount of SSDI

---

[1] Benefits were not payable during the first five months of Plaintiff's period of disability, because this was Plaintiff's mandatory waiting period. See 42 U.S.C. §§ 423(a)(1) and (c)(2); see also 20 C.F.R. §§ 404.315(a)(4) and 404.316(a).

2

benefits. (Id. at 24-26.) A notice accompanying the ALJ decision advised Plaintiff that, if he disagreed with the decision, he could file an appeal with the SSA's Appeals Council within sixty days of receipt of the notice. (Id. at 21-23.)

Instead, on April 24, 2008, Plaintiff filed another civil action in this court. See Petre v. Comm'r of Soc. Sec., 08-CV-1738 (ARR) (E.D.N.Y.). (See also R. at 15-19.) On October 30, 2009, Judge Ross again dismissed Plaintiff's action for failure to exhaust his administrative remedies. (Id.) On February 26, 2013, more than three years later, Plaintiff filed a request for review of the March 26, 2008, ALJ decision. (See id. at 11-13.) Plaintiff then filed this action on April 29, 2013. (See Compl.) On August 29, 2013, Defendant again filed a motion to dismiss for lack of subject matter jurisdiction, on the basis that Plaintiff still had not exhausted his administrative remedies as required for judicial review. (See Ltr.-Mot. to Dismiss (Dkt. 15).) On September 12, 2013, while Defendant's motion was pending, the Appeals Council decided to accept Plaintiff's untimely February 26, 2013, request for review of the 2008, ALJ decision, reasoning that Plaintiff's 2008, civil action should be treated as a though it were a timely filed request for review. (R. at 4-6.)

On November 4, 2013, in light of the Appeals Council's decision, Defendant sought leave to withdraw her motion to dismiss and to move instead for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 42 U.S.C. § 405(g). (Ltr.-Mot. Req. for New Briefing Schedule (Dkt. 21).) On January 24, 2014, Defendant filed the administrative record and her Answer to Plaintiff's Complaint. (Answer (Dkt. 33).) On May 6, 2014, Defendant filed her motion for judgment on the pleadings (Def.'s Mot.), her memorandum of law in support of the motion (Def.'s Mem. of Law ("Def.'s Mem.") (Dkt. 37)), Plaintiff's response and cross-motion

(Pl.'s Resp.), and Defendant's reply and opposition to Plaintiff's cross-motion (Def.'s Opp'n to Pl.'s Cross-Mot. and Reply Mem. of Law ("Def.'s Opp'n") (Dkt. 39)).

## II. LEGAL STANDARDS

### A. Review of Final Determinations of the SSA

Under Rule 12(c), "a movant is entitled to judgment on the pleadings only if the movant establishes 'that no material issue of fact remains to be resolved and that [he] is entitled to judgment as a matter of law.'" Guzman v. Astrue, No. 09-CV-3928, 2011 WL 666194, at *6 (S.D.N.Y. Feb. 4, 2011) (quoting Juster Assocs. v. City of Rutland, 901 F.2d 266, 269 (2d Cir. 1990)). "The role of a district court in reviewing the Commissioner's final decision is limited." Pogozelski v. Barnhart, No. 03-CV-2914 (JG), 2004 WL 1146059, at *9 (E.D.N.Y. May 19, 2004). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). The court's review is limited to determining whether the Commissioner's final decision is based upon correct legal standards and is supported by substantial evidence in the record as a whole. Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012); Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). Thus, as long as (1) the ALJ has applied the correct legal standard, and (2) the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on the court. See Pogozelski, 2004 WL 1146059, at *9.

### B. Computation of Disability Insurance Benefits

"To receive federal disability benefits, an applicant must be 'disabled' within the meaning of the Social Security Act." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 42 U.S.C. § 423. A claimant is "disabled" within the meaning of the Social Security Act if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Act instructs that an individual's monthly SSDI benefits shall be equal to his primary insurance amount ("PIA"). 42 U.S.C. § 423(a)(2); see also 20 C.F.R. § 404.201(a). The formulas for computing an individual's PIA are set forth in 42 U.S.C. § 415. See also 20 C.F.R. Part 404, Subpart C (Computing Primary Insurance Amounts). The SSA uses the same PIA formulas and rules in determining an individual's SSDI benefits as for retirement benefits. See 20 C.F.R. § 404.317. The SSA determines a disabled individual's PIA under 42 U.S.C. § 415 as though he had reached the age of 62 in the first month during which he became entitled to SSDI benefits and as though he had become entitled to retirement benefits in the same month in which he filed his application for disability insurance benefits. 42 U.S.C. § 423(a)(2)(B); 20 C.F.R. § 404.317. An individual is entitled to the highest PIA that can be computed, considering all possible computation methods. 20 C.F.R. § 404.204(a).

An individual is eligible for SSDI benefits beginning with the first month of his period of disability as provided in 42 U.S.C. § 416(i)(2)(C). 42 U.S.C. § 415(a)(3)(B)(ii); see also 20 C.F.R. § 404.316(a).[2] For an individual who initially became eligible for SSDI benefits

---

[2] Although eligibility begins with the first month of an individual's period of disability, benefits are not payable until after a five-month waiting period. See supra n.1.

after 1979, the SSA computes the individual's PIA based on his average indexed monthly earnings ("AIME"). 42 U.S.C. §§ 415(a)(1)(A) and (B)(ii); 20 C.F.R. § 404.204(b)(1); see also 20 C.F.R. § 404.210(a). To determine the individual's AIME, the SSA uses the formula set forth in 20 C.F.R. § 404.211. See 20 C.F.R. § 404.210(b)(1). According to this formula, the SSA first indexes the individual's social security earnings after 1950, 20 C.F.R. § 404.211(d), and then averages those earnings over the period of time that the individual can reasonably be expected to have worked in employment or self-employment covered by social security, 20 C.F.R. § 404.211(a).

The SSA uses the following factors in determining an individual's AIME: (1) the individual's earnings covered by social security, see 20 C.F.R. § 404.211(b)(1); (2) the individual's base computation years pursuant to § 404.211(b)(2); and (3) the average of the total wages of all workers for each year from 1951 to the indexing year, which is defined as the second year before the individual becomes eligible for SSDI benefits, see id. §§ 404.211(c) and (d)(2). The first factor (covered earnings) is based on the individual's social security earnings record. See 42 U.S.C. §§ 405(c)(2)(A) and (c)(3). The second factor (base computation years) is the number of years beginning with the later of 1951 or the year the individual reaches age 22, through the earliest of the year the individual reaches age 62, becomes disabled, or dies. 20 C.F.R. § 404.211(e). For disabled individuals, the SSA does not count years that are entirely or partially within a period of disability, unless counting those years would lead to a higher PIA. Id. In such a situation, the SSA counts all years during the period of disability, which are called "elapsed years," and divides that number by five, disregarding any remaining fraction. Id. § 404.211(e)(3). The resulting "disability dropout" number, which may not exceed five, is then subtracted from the number of elapsed years to get the number of benefit computation years,

which cannot be less than two. Id. § 404.211(e)(2). For the benefit computation years, the SSA uses those years in which the individual earned the most, after indexing. Id. The third factor (indexing) is based on the yearly averages of total wages for all workers, found in Appendix I to 20 C.F.R. Part 404, Subpart C, for years 1951 through 1990, and published in the Federal Register for years after 1990 through today. Id. § 404.211(c).

After indexing the individual's earnings and determining his benefit computation years, the SSA computes the individual's AIME by: "(1) Totaling [the] indexed earnings in [his] benefit computation years; (2) Dividing the total by the number of months in [his] benefit computation years; and (3) Rounding the quotient to the next lower whole dollar, if not already a multiple of $1." Id. § 404.211(f).

In order to determine an individual's PIA and SSDI benefit amount, the SSA applies the appropriate benefit formula to the individual's AIME. Id. § 404.210(b)(3). Benefit formulas are contained in Appendix II to 20 C.F.R. Part 404, Subpart C, and they are published in the Federal Register for subsequent years. Id. § 404.212(b)(2) and (b)(3). Finally, the SSA applies any automatic cost-of-living adjustments in the PIA that became effective in or after the year the individual reached the age of 62.[3] See id. § 404.210(b)(4).

### III. DISCUSSION

#### A. Computation of SSDI Benefits

Plaintiff argued during the December 12, 2007, hearing that his AIME should have been based on the five years (60 months) of his highest earnings, rather than the 29 years (348 months) used by the SSA. (R. at 329-30.) In this action, Plaintiff contends that the ALJ

---

[3] Cost-of-living adjustments to the PIA from 1979 through 1991 are listed in Appendix VI to 20 C.F.R. Part 404, Subpart P. Adjustments for years following 1991 are listed in SSA Program Operations Manual System ("POMS") RS § 00601.120C.

committed legal error in upholding the formula used by the SSA to determine Plaintiff's AIME and resulting PIA. (Pl.'s Resp. at 8-9.) Plaintiff is mistaken on both counts.

In computing Plaintiff's AIME, the SSA subtracted the year that Plaintiff reached the age of 22 (1965) from the year that he became eligible for disability benefits (1999), resulting in 34 "elapsed years." (R. at 25.) The SSA subtracts up to five years from an individual's elapsed years, depending on the quotient of the disability dropout calculation. 20 C.F.R. § 404.211(e)(2). In Plaintiff's case, the SSA subtracted five years,[4] resulting in 29 computation base years, or 348 months. (R. at 25.) According to Plaintiff's argument at his hearing, the SSA should have used five computation years instead, "because people with disability has to have computation made on five years to the highest amount of working . . . [a]nd five years, means sixty month." (Id. at 330.)

The court finds that the ALJ did not commit legal error in upholding the SSA's computation of Plaintiff's AIME and resulting SSDI benefit amount. As the ALJ noted in his decision, the SSA used the computation method required by 20 C.F.R. § 404.211. (Id. at 25.) Plaintiff argues that this regulation only applies to old-age benefits and "SSI"[5] and not to SSDI benefits (Pl.'s Resp. at 8), but Plaintiff is mistaken. As explained in 20 C.F.R. § 404.204: "If after 1978 you reach age 62, or become disabled or die before age 62, we compute your primary

---

[4] The ALJ performed his own calculation of Plaintiff's disability dropout number, in which he used the number of Plaintiff's benefit computation years as the dividend, dividing 29 by 5, which equals 5.8, or 5 dropout years after disregarding the remaining fraction. (R. at 25.) See 20 C.F.R. § 404.211(e)(3). Defendant uses the same calculation in her memorandum. (Def.'s Mem. at 9.) The court reads the regulations as requiring the use of Plaintiff's elapsed years as the dividend instead. See 20 C.F.R. § 404.211(e)(1) (defining elapsed years in this circumstance as the number of years between when an individual reached age 22 and the year in which he became disabled); 20 C.F.R. § 404.211(e)(3) ("We divide the elapsed years by 5 and disregard any fraction." (emphasis added)). In Plaintiff's case, the disability dropout calculation would therefore be 34 divided by 5, which equals 6.8. However, the discrepancy is irrelevant, because, under either calculation, Plaintiff's disability dropout number would be 5. See id. (the number of disability dropout years "may not exceed 5").

[5] "SSI" stands for Supplemental Security Income, which is a federally funded means-tested assistance program administered by the SSA. See 42 U.S.C. §§ 1381-1383f (Title XVI of the Social Security Act). Contrary to Plaintiff's assertion, 20 C.F.R. § 404.211 does not apply to, or even mention, the SSI program.

insurance amount under what we call the <u>average-indexed-monthly-earnings</u> method, which is described in §§ 404.210 through 404.212." Plaintiff is correct that 20 C.F.R. § 404.211 applies to old-age benefits, but the regulation also clearly applies to SSDI benefits. See 20 C.F.R. § 404.211 (referencing old-age <u>or</u> disability benefits); see also 20 C.F.R. § 404.317 (entitled "How is the amount of my disability benefit calculated?" and explaining that "[y]our monthly benefit is equal to the primary insurance amount (PIA) . . . . [which] is computed . . . as if it was an old-age benefit").

Plaintiff maintains that the SSA instead should have applied "suitable laws for work related injuries." (Pl.'s Resp. at 8.) Yet none of the statutory or regulatory authorities Plaintiff cites as "suitable laws" apply to his circumstances.[6] Instead, these authorities all apply to situations where the SSA offsets an individual's SSDI benefit due to his receipt of workers' compensation or other public disability benefit. Furthermore, only one of the provisions cited by Plaintiff contains a calculation requiring the use of an individual's five highest earnings years. See 20 C.F.R. § 404.408(c)(3)(B). Yet this calculation is used to compute an individual's "average current earnings," not the individual's benefit amount, and it also is relevant only to situations where the SSA offsets an individual's benefits. Id. As explained below, the SSA did not apply such an offset to Plaintiff's benefits, so these provisions are inapposite.

In the March 26, 2008, decision, the ALJ correctly found that 20 C.F.R. § 404.211 governed the computation of Plaintiff's benefit amount. (R. at 24.) The ALJ then proceeded through each step of the contested computation and reviewed Plaintiff's own computation, social

---

[6] Plaintiff cites to 42 U.S.C. § 424a(a), 20 C.F.R. §§ 404.408(a) and (c), and SSA POMS DI § 52101.001. (Pl.'s Resp. at 8.) Plaintiff also cites to "SS Act Section 504" (id.), but this citation appears intended to reference the Social Security Handbook, Chapter 504. (See Compl. at 45-47 (attachment of printout from the Social Security Handbook, Chapter 504 "Reduction to Offset Workers' Compensation or Public Disability Benefits," http://www.socialsecurity.gov/OP_Home/handbook/handbook.05/handbook-0504.html).)

security earnings record, date of birth, and month of entitlement to benefits, before determining that Plaintiff was already receiving the correct amount of SSDI benefits. (Id. at 25.) The court has reviewed the regulations, formulas, and computations as well, and determines that the ALJ applied the correct legal standard without error.

### B. Effect of Plaintiff's Receipt of Workers' Compensation Benefits

When an individual is entitled to receive both SSDI benefits and workers' compensation benefits, the SSA must ensure that the individual's total benefits do not exceed 80% of his pre-disability income (defined as "average current earnings"). 42 U.S.C. § 424a(a); 20 C.F.R. §§ 404.408(a) and (c). If the combined benefit amount would exceed 80% of the individual's average current earnings, then the SSA imposes an offset against the individual's SSDI benefits. Id.

Plaintiff's objection to his benefit amount appears to arise largely from a mistaken belief that the SSA reduced his SSDI benefits pursuant to 20 C.F.R. §§ 408. (See Compl. at 8-9; Pl.'s Resp. at 5, 15-26.) Plaintiff repeatedly cites to 20 C.F.R. § 404.317, which states, in part, that "[y]our monthly benefit amount may be reduced if you receive worker's compensation or public disability payments before you become 65 years old as described in § 404.408." (See Pl.'s Resp. at 5, 7, 11, 15, 18.) Plaintiff apparently interprets this language to mean that, because he receives workers' compensation for his disability, the SSA must necessarily reduce his SSDI benefits, and therefore § 404.408 governs the computation of his ultimate benefit amount. (See Pl.'s Resp. at 16 ("As can be seen, the 20 CFR 404.317 provide without doubt that primary insurance amount . . . formula is applicable for old age beneficiaries and 20 CFR 404.408 is applicable for worker related injury beneficiaries.").)

According to his interpretation of the regulations, Plaintiff believes that he was entitled to $2,149.06 in monthly SSDI benefits as of May 2000, rather than the $787.00 that he instead received. (See Pl.'s Resp. at 30-31.) He arrives at this number by subtracting $1,733 in annual workers' compensation benefits from $3,882.06, which he considers to be his average current earnings. (Id.) However, the figure of $3,882.06 appears to be a mistaken reiteration of $3,881.60, which the SSA had previously calculated to represent 80% of Plaintiff's average current earnings. (See Compl. at 26.) This number was relevant only for the SSA's initial determination that it was not required to offset Plaintiff's benefits. See 20 C.F.R. § 404.408.

In short, Plaintiff does not claim that it would have been improper for the SSA to have reduced his SSDI benefits due to his receipt of workers' compensation. Instead, he apparently believes that the SSA was required to reduce his benefits, but that his ultimate benefits amount should have been determined through his erroneous interpretation of the formula found in 20 C.F.R. § 404.408(c), which would have resulted in a much higher benefit amount than what he currently receives.[7] However, the SSA determined that it did not need to reduce Plaintiff's SSDI benefits, because his combined benefit amount did not exceed 80% of his average current earnings. (See R. at 257 ("Your present workers' compensation payments of $400.00 per week do not affect your Social Security benefits.").) Furthermore, even if the SSA had been required to apply a reduction, the agency still would have first used the AIME formula set forth in 20 C.F.R. § 404.211 to determine Plaintiff's PIA and SSDI benefit amount. The formula from 20 C.F.R. § 404.408(c) would have been used only to determine the amount of subsequent reduction to Plaintiff's SSDI benefit.

---

[7] Defendant notes that the amount of monthly SSDI benefits to which Plaintiff believes he is entitled ($2,149.06) is "improbable," because "the maximum monthly benefit rate as of May 2000, for a beneficiary who had steady earnings at the maximum social security taxable level since age 22 (not Plaintiff's circumstances), was $1,248 for an individual who retired at age 62." (Def.'s Opp'n at 5 n.3 & App'x A.)

11

Plaintiff argues that the ALJ abused his discretion "[b]y not exploring the relevant facts" concerning Plaintiff's work-related injury. (Pl.'s Resp. at 8.) Because the ALJ upheld the computation of Plaintiff's SSDI benefits pursuant to 20 C.F.R. § 404.211, which Plaintiff believes does not apply to work-related disabilities, Plaintiff contends that the ALJ's decision was not supported by substantial evidence. (Id. at 8-9.) As explained above, the fact that Plaintiff's disability may be work-related does not in and of itself affect the formula used to determine his SSDI benefit. Accordingly, the ALJ was correct in determining that the SSA used the appropriate formula as set forth in 20 C.F.R. § 404.211. Furthermore, despite the fact that Plaintiff receives workers' compensation benefits, the SSA determined that his combined benefits amount was not high enough to require an offset to his SSDI benefits. Therefore, the ALJ was also correct in finding that neither the benefit reduction formula found in 20 C.F.R. § 404.408, nor Plaintiff's erroneous interpretation of that formula, were applicable to Plaintiff's circumstances. Accordingly, the court finds that the ALJ's decision was supported by substantial evidence.

### C. Plaintiff's Requested Relief

Plaintiff seeks multiple forms of relief, including a reclassification of his disability pursuant to various workers' compensation-related regulations and publications (Pl.'s Resp. at 34-35), a credit of the alleged underpayment in SSDI benefits, with interest (Compl. at 16; Pl's Resp. at 26-33, 35), as well as an award for emotional distress for violations of the Fifth and Fourteenth Amendments to the United States Constitution (Compl. at 16). Because the court upholds the March 26, 2008, ALJ decision finding that Plaintiff was receiving the correct amount of SSDI benefits computed according to the correct regulations, Plaintiff is not entitled to relief. Accordingly, the court need not consider Plaintiff's arguments on this point.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion for judgment on the pleadings is GRANTED. Plaintiff's motion is DENIED. The Clerk of Court is respectfully directed to enter judgment for Defendant and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
November 9, 2015

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge